NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11532

TRENEA FIGGS  vs.  BOSTON HOUSING AUTHORITY.


Suffolk.     April 8, 2014. - August 18, 2014.

Present:  Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly,
& Lenk, JJ.[1]


Boston Housing Authority.  Housing Authority.  Municipal
    Corporations, Housing authority.  Practice, Civil, Action
    in nature of certiorari.  Administrative Law, Hearing,
    Substantial evidence.  Evidence, Hearsay.


    Civil action commenced in the Boston Division of the
Housing Court Department on August 24, 2012.

    The case was heard by Jeffrey M. Winik, J.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    Michael J. Louis & Angela Marcolina for the defendant.
    Jeremy T. Robin for the plaintff.
    The following submitted briefs for amicus curiae:
    Jeffrey C. Turk for Greater Boston Real Estate Board &
another.
    James M. McCreight, Alex Munevar, & Quinten Steenhuis for
Massachusetts Coalition for the Homeless & others.
    Esme Caramello, Deena Greenberg, & Melanie Zuch for Charles
Hamilton Houston Institute & another.

    ---

    [1] Chief Justice Ireland participated in the deliberation on
this case prior to his retirement.

SPINA, J.  Trenea Figgs is a participant in the United States Department of Housing and Urban Development (HUD) Housing Choice Voucher Program, commonly referred to as "Section 8," administered by the Boston Housing Authority (BHA) pursuant to 42 U.S.C. § 1437f (2012) and implementing HUD regulations.[2]  On November 22, 2011, the BHA notified Figgs of its intent to terminate her participation in the Section 8 program due to allegations of serious or repeated violations of her lease. Several weeks earlier, Boston police officers had executed a search warrant for Figgs's apartment in connection with a criminal investigation of her brother, Damon Nunes, and had discovered, among other things, two plastic bags of marijuana, a .380 caliber Ruger pistol, and five rounds of ammunition.  Figgs

---

[2] In the United States Department of Housing and Urban Development (HUD) Housing Choice Voucher Program (Section 8), HUD "pays rental subsidies so eligible families can afford decent, safe and sanitary housing."  24 C.F.R. § 982.1(a)(1) (1999).  See Costa v. Fall River Hous. Auth., 453 Mass. 614, 615 n.2 (2009); Carter v. Lynn Hous. Auth., 450 Mass. 626, 626 n.1 (2008); Wojcik v. Lynn Hous. Auth., 66 Mass. App. Ct. 103, 103 n.2 (2006).  The Section 8 program is "generally administered by State or local governmental entities called public housing agencies (PHAs).  HUD provides housing assistance funds to the PHA.  HUD also provides funds for PHA administration of the programs."  24 C.F.R. § 982.1(a)(1).  Section 8 housing assistance may be "tenant-based" or "project-based."  24 C.F.R. § 982.1(b)(1) (1999).  With tenant-based assistance, "[f]amilies select and rent units that meet program housing quality standards.  If the PHA approves a family's unit and tenancy, the PHA contracts with the owner to make rent subsidy payments on behalf of the family.  A PHA may not approve a tenancy unless the rent[] is reasonable."  24 C.F.R. § 982.1(a)(2) (1999).  See 24 C.F.R. § 982.1(b)(1), (2) (1999).

appealed the proposed termination. Following an informal hearing on February 22, 2012, a hearing officer, by decision dated August 6, 2012, upheld the termination of Figgs's Section 8 housing subsidy.

On August 24, 2012, Figgs filed a verified complaint in the Housing Court for injunctive and declaratory relief. She sought to enjoin the BHA from terminating her Section 8 housing subsidy on the ground that the informal hearing failed to satisfy her procedural due process rights under the Fourteenth Amendment to the United States Constitution, and she sought a declaration that the bases for her termination were insufficient. In response, the BHA filed a motion for judgment on the pleadings. On March 19, 2013, a judge reversed the decision of the hearing officer, and he ordered the BHA to reinstate Figgs's Section 8 housing subsidy back to November 22, 2011.[3] The BHA appealed the

---

[3] The judge treated Figgs's request for declaratory judgment as one seeking relief in the nature of certiorari pursuant to G. L. c. 249, § 4. In light of his decision regarding the certiorari claim, the judge did not address the injunction or due process claims. In her brief in this appeal, Figgs has not raised any due process claims. It appears from the record that Figgs received proper notice of the BHA's intent to terminate her Section 8 housing subsidy, see 24 C.F.R. § 982.554(a) (1999); was afforded an informal hearing conducted by an impartial decision maker, see 24 C.F.R. § 982.555(a)(1)(v) and (e)(4)(i) (2000); was represented by counsel at the hearing, see 24 C.F.R. § 982.555(e)(3) (2000); was given an opportunity to present evidence and question witnesses, see 24 C.F.R. § 982.555(e)(5) (2000); and was issued a written decision stating the reasons for the decision, see 24 C.F.R. § 982.555(e)(6) (2000), and explaining the hearing officer's assessment of mitigating facts, see 24 C.F.R. § 982.552(c)(2)(i) (2010). See generally Costa v.

judge's decision, the case was entered in the Appeals Court, and we transferred it to this court on our own motion.  We conclude that, notwithstanding the enactment of G. L. c. 94C, § 32L, which decriminalized the possession of one ounce or less of marijuana, the BHA properly terminated Figgs's participation in the Section 8 program due to evidence of other criminal activity in her rental premises, which constituted a serious lease violation.  Accordingly, we reverse the judgment of the Housing Court.[4]

1.  Background.  Figgs and her three minor children are the authorized occupants of a subsidized apartment on Woolson Street in the Mattapan section of Boston.  Nunes would visit her there and, on occasion, would babysit her children.  Pursuant to paragraph 10(a) of her lease, Figgs agreed "to refrain from engaging in and to cause Household member(s), guest(s), or any person under any Household member's control to refrain from engaging in any criminal or illegal activity in the rental

---

Fall River Hous. Auth., 453 Mass. at 621-632.  Accordingly, we are not of the view that Figgs's due process rights were violated.

[4] We acknowledge the amicus briefs submitted in support of Figgs by the Massachusetts Coalition for the Homeless, the Boston Tenants Coalition, and City Life/Vida Urbana; and by the Charles Hamilton Houston Institute for Race and Justice, the Committee for Public Counsel Services, and the American Civil Liberties Union of Massachusetts.  We also acknowledge the amicus brief submitted in support of the Boston Housing Authority (BHA) by the Greater Boston Real Estate Board and the Institute of Real Estate Managers.

Premises."  BHA model lease § 10(a).  As a participant in the Section 8 program, Figgs also signed a document entitled "Family Obligations of the Housing Choice Voucher Program," which stated, among its provisions, that "[t]he family may not commit any serious or repeated violation of the lease."[5]  By signing this document, she certified that she understood her obligations under the Section 8 program, and that her failure to comply with these obligations "may result in the termination of [her] participation in the program."  According to Figgs, prior to the commencement of the underlying proceedings, she had been a participant in the Section 8 program for approximately ten years without incident.

On October 18, 2011, members of the Boston police department initiated an investigation into Nunes after a confidential informant (CI) told officers that the CI had observed a black .380 caliber firearm in Nunes's bedroom at the apartment where Figgs lived with her children.  The CI believed that Nunes also lived there.  The CI told officers that Nunes had been in possession of this firearm "for some time," and that Nunes had been known on occasion to hide the firearm on the back porch of the apartment outside his bedroom window.  As part of

---

[5] Under HUD's regulations, "[f]amily" is defined as "[a] person or group of persons, as determined by the PHA, approved to reside in a unit with assistance under the [Section 8] program."  24 C.F.R. § 982.4 (2002).  Pursuant to this definition, Nunes was not a member of Figgs's "family."

the investigation, officers independently observed Nunes entering and leaving the house in which the apartment was located several times over the course of approximately one week. Detective Rodney Best then applied for and obtained from a judge in the Superior Court a search warrant for Figgs's apartment.

On the evening of October 24, members of the Boston police department assigned to the youth violence strike force detained Nunes outside Figgs's apartment and executed the search warrant. The apartment was unoccupied at the time of the search. From the room that they understood to be Nunes's bedroom, officers recovered two bags of a leafy green substance believed to be marijuana,[6] $653 in cash, a box of sandwich bags, a Massachusetts photographic identification card of Nunes, a Rhode Island medical card for Nunes, a red cellular telephone, and an "iPod," a portable media player.[7] The police incident report did not indicate the amount or weight of the marijuana. In a separate bedroom, officers found a Massachusetts electronic bank transfer (EBT) card. They also recovered a sneaker from the back porch of the apartment, inside of which was a .380 caliber Ruger

---

[6] Although the search warrant made no mention of controlled substances, the marijuana was discovered in plain view.

[7] The police incident report stated that officers also recovered a digital scale, but that item did not appear on the inventory list of property taken from Figgs's apartment pursuant to the search warrant. The hearing officer did not include the digital scale in his itemization of what was recovered during the search of the apartment.

pistol that contained five rounds of ammunition.  Nunes was arrested and charged with possession of a class D substance with intent to distribute, commission of this offense within a school zone, unlawful possession of a firearm and of ammunition, and improper storage of a firearm.

On November 22, the BHA notified Figgs of its intent to terminate her participation in the Section 8 housing program. Among the stated reasons for the proposed termination were "[s]erious or repeated violations of the lease," specifically paragraph 10(a), committed on October 24 when police discovered marijuana and a loaded firearm in her apartment.[8]  As authority for its decision, the BHA relied on 24 C.F.R. § 982.551(e) (2010) (obligation not to commit serious violation of lease), and 24 C.F.R. § 982.552(c)(1)(i) (2010) (authority to terminate assistance for violation of any family obligation).  Figgs appealed the proposed termination and requested an informal hearing.

---

[8] The BHA also sought to terminate Figgs's Section 8 housing subsidy on the grounds that she failed to request approval from the BHA to add a family member (Nunes) as an occupant of the apartment, and failed to provide complete and accurate information regarding family composition and income.  The hearing officer found that, because the evidence was insufficient to prove that Nunes was living in Figgs's apartment, these two grounds for termination lacked merit.  The Housing Court judge affirmed the hearing officer's determinations with regard to these two bases for termination, and the BHA has not challenged this portion of the judge's decision on appeal.

Following a hearing on February 22, 2012, at which Figgs was represented by counsel and presented evidence on her own behalf, a hearing officer upheld the BHA's decision.[9]  He stated that the police reports contained "substantial indicia of reliability to warrant a finding that Mr. Nunes was involved in crimes of drugs and unlawful possession of [a] firearm in [Figgs's] apartment."  Notwithstanding the fact that the firearm was found on the back porch, he continued, that area was still part of the apartment.  Given Figgs's acknowledgement that Nunes was permitted to go to her apartment, the hearing officer found that Nunes was Figgs's invitee and, as such, was under her control when he engaged in criminal activities in her apartment.[10]  Based on these findings, the hearing officer concluded that Figgs had violated paragraph 10(a) of her lease.

---

[9] In support of its allegations, the BHA submitted police incident reports dated October 24 and 25, 2011; a so-called "return" of the officer who executed the search warrant, listing an inventory of the property taken from the premises; an affidavit in support of the search warrant application; and a "Recertification Questionnaire," signed by Figgs on January 25, 2011, setting forth the "Family Composition" of her apartment.

[10] Under HUD's regulations, the phrase "[o]ther person under the tenant's control" means, in relevant part, that "the person, although not staying as a guest (as defined in this section) in the unit, is, or was at the time of the activity in question, on the premises (as premises is defined in this section) because of an invitation from the tenant or other member of the household who has express or implied authority to so consent on behalf of the tenant."  24 C.F.R. § 5.100 (2001).  In this appeal, Figgs has not challenged the hearing officer's characterization of Nunes as a person "under [her] control."  Id.

The hearing officer next considered whether the lease violation was "serious," such that it warranted Figgs's termination from the Section 8 program. The hearing officer said that Nunes was involved in an activity that threatened the safety of others because a firearm containing five rounds of ammunition was recovered in the apartment. Moreover, he continued, the quantity of marijuana, the drug paraphernalia, the large amount of cash, and the firearm permitted an inference not only that Nunes was in possession of drugs, but also that he intended to distribute or sell drugs in the apartment and to use the apartment as a storage place for his firearm. The hearing officer determined that the BHA had sufficient grounds to propose termination of Figgs's Section 8 housing subsidy for a serious lease violation.

Finally, in accordance with 24 C.F.R. § 982.552(c)(2) (2010), the hearing officer considered whether there were mitigating circumstances that would warrant an outcome other than Figgs's termination from the Section 8 program. He stated that Figgs's claimed lack of knowledge about Nunes's behavior and her positive history as a Section 8 tenant did not offset the seriousness of the criminal activities in her apartment. The hearing officer found that Figgs had failed to exercise proper control in her apartment, which would have forestalled such criminal activities in the first place. He also found that

because Figgs was not disabled, had graduated from a computer technology program, and was actively looking for employment, her termination from the Section 8 program would not cause a severe hardship to her family. Accordingly, the hearing officer concluded that termination of Figgs's Section 8 housing subsidy was proper in light of her serious lease violation.[11]

In reversing the hearing officer's decision and entering judgment in favor of Figgs, the Housing Court judge concluded that the hearing officer committed legal errors that adversely affected Figgs's material rights. The judge determined that there was insufficient reliable evidence in the administrative record to support an inference that Nunes either engaged in drug-related criminal activity in Figgs's apartment or kept an illegal firearm and ammunition there. With regard to the marijuana, he pointed out that the police officers did not include in their written reports any observations or findings about its weight or amount. In the judge's view, this was a critical omission because under G. L. c. 94C, § 32L, "possession of one ounce or less of marihuana shall only be a civil offense," not a crime. The judge stated that without evidence that the marijuana collectively weighed more than one ounce,

---

[11] At the hearing, the BHA stated that it was not willing to offer a lesser sanction of prohibiting Nunes from visiting Figgs at her apartment given that both drugs and a firearm were found in the apartment, posing a danger to other residents and neighbors.

there was no basis for the hearing officer to conclude that Nunes had engaged in the crime of possession of a class D substance.  Moreover, he continued, there was no evidence that Nunes intended to distribute marijuana to others.  The judge concluded that the hearing officer made a legal error in determining that Figgs had committed a serious violation of paragraph 10(a) of her lease "based upon illegal drug activity."

With regard to the firearm and ammunition, the judge stated that the hearing officer relied primarily on the hearsay statements of the CI, as set forth in the search warrant affidavit, to support his finding that Nunes kept a pistol in Figgs's apartment.  The judge pointed out that, apart from such statements, there was no testimony from anyone who saw a firearm in Figgs's apartment, who saw Nunes with a firearm, or who saw Nunes place a firearm on the porch of the apartment.  Further, the judge continued, there was no evidence that the second-floor porch was part of the apartment leased to Figgs, or that she had exclusive access to it.  The judge concluded that the hearing officer's reliance on the CI's hearsay statements constituted legal error because the statements were not supported by substantial indicia of reliability and, therefore, were not sufficient to support the termination of Figgs's Section 8 housing subsidy.

2.  Standard of review.  The function of a civil action in the nature of certiorari under G. L. c. 249, § 4, is "to relieve aggrieved parties from the injustice arising from errors of law committed in proceedings affecting their justiciable rights when no other means of relief are open."[12]  Swan v. Justices of the Superior Court, 222 Mass. 542, 544 (1916).  Certiorari also has been described as "a limited procedure reserved for correction of substantial errors of law apparent on the record created before a judicial or quasi-judicial tribunal."  School Comm. of Hudson v. Board of Educ., 448 Mass. 565, 575-576 (2007).  "To obtain certiorari review of an administrative decision, the following three elements must be present:  (1) a judicial or quasi judicial proceeding, (2) from which there is no other reasonably adequate remedy, and (3) a substantial injury or injustice arising from the proceeding under review."[13]  Indeck v.

---

[12] General Laws c. 249, § 4, provides that "[a] civil action in the nature of certiorari . . . may be brought in the supreme judicial or superior court or, if the matter involves any right, title or interest in land . . . in the land court."  Pursuant to G. L. c. 185C, § 3, the Boston division of the Housing Court Department has concurrent jurisdiction with the Superior Court Department regarding housing matters.  We conclude that the Housing Court has jurisdiction under G. L. c. 249, § 4, concurrent with the Superior Court, to review decisions of a public housing authority regarding housing matters.

[13] The parties have not challenged whether an action in the nature of certiorari was the proper avenue for review of the BHA's decision.  Although we have acknowledged that there is some debate whether review of a local housing authority's action should proceed under G. L. c. 249, § 4, or under G. L. c. 30A, § 14, we also have recognized jurisprudence standing for the

Clients' Sec. Bd., 450 Mass. 379, 385 & n.12 (2008).  See Hoffer v. Board of Registration in Med., 461 Mass. 451, 456-457 (2012).

It is well established that "the standard of review [under G. L. c. 249, § 4,] may vary according to the nature of the action for which review is sought."  Garrity v. Conservation Comm'n of Hingham, 462 Mass. 779, 792 (2012), quoting Forsyth Sch. for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 217 (1989).  See Boston Edison Co. v. Boston Redev. Auth., 374 Mass. 37, 49 (1977).  Ordinarily, where the action being reviewed is a decision made in an adjudicatory proceeding where evidence is presented and due process protections are afforded, a court applies the "substantial evidence" standard.[14]  See Black Rose, Inc. v. Boston, 433 Mass.

---

proposition that a local housing authority is not an "agency" within the meaning of G. L. c. 30A, § 1.  See Rivas v. Chelsea Hous. Auth., 464 Mass. 329, 333-334 (2013), and cases cited. Because the BHA's decision satisfies the necessary elements for certiorari review, and because the Housing Court judge treated Figgs's complaint as one seeking relief under G. L. c. 249, § 4, we do the same.  See id. at 334 (for purposes of appeal, decision of local housing authority treated "as it ha[d] been treated throughout the appeal process").

[14] In contrast, "[w]here the action being reviewed is not a decision made in an adjudicatory proceeding and where the action entails matters committed to or implicating a board's exercise of administrative discretion, the court applies the 'arbitrary and capricious' standard" (emphasis added).  Garrity v. Conservation Comm'n of Hingham, 462 Mass. 779, 792 (2012).  See Forsyth Sch. for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 217-218 & n.2 (1989) (judge correctly applied "arbitrary and capricious" standard of review where proceeding before board was not adjudicatory and did not implicate right to engage in lawful occupation).

501, 504-505 (2001); Saxon Coffee Shop, Inc. v. Boston Licensing Bd., 380 Mass. 919, 924-925 (1980); Durbin v. Selectmen of Kingston, 62 Mass. App. Ct. 1, 5-6 & n.7 (2004). See also A.J. Cella, Administrative Law and Practice § 1917, at 501 n.55 (1986 & Supp. 2013). Therefore, we consider whether the Housing Court judge correctly ruled that the hearing officer committed legal errors that adversely affected Figgs's material rights. As part of this inquiry, we examine the record to determine whether the hearing officer's factual findings were supported by substantial evidence.[15]

3. Discussion. Congress has declared that it is a policy of the United States to "promote the goal of providing decent and affordable housing for all citizens through the efforts and encouragement of Federal, State, and local governments, and by the independent and collective actions of private citizens, organizations, and the private sector." 42 U.S.C. § 1437(a)(4) (2012). To facilitate the achievement of this goal, Congress has further declared that the United States will "assist States and political subdivisions of States to address the shortage of

---

[15] Pursuant to HUD's regulations, the hearing officer's factual findings "relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing." 24 C.F.R. §§ 982.555(e)(6) (2000). See Carter v. Lynn Hous. Auth., 450 Mass. at 634, 636. A preponderance of the evidence persuades a trier of fact that what is sought to be proved is more probably true than not true. See Goffredo v. Mercedes-Benz Truck Co., 402 Mass. 97, 102-103 (1988); Sargent v. Massachusetts Acc. Co., 307 Mass. 246, 250 (1940).

housing affordable to low-income families."  42 U.S.C. § 1437(a)(1)(B) (2012).  Through the Section 8 program, "assistance payments may be made with respect to existing housing" for the purposes of "aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing."  42 U.S.C. § 1437f(a).  See 42 U.S.C. § 1437f(o)(1)(A) (Secretary of HUD may provide financial support to public housing agencies for tenant-based assistance using established payment standard).

Congress has authorized the Secretary of HUD to "make such rules and regulations as may be necessary to carry out his functions, powers, and duties."  42 U.S.C. § 3535(d) (2012).  Accordingly, the Secretary promulgated 24 C.F.R. §§ 982.1-982.643 (1995) as "a unified statement of program requirements for the tenant-based housing assistance programs under Section 8 of the United States Housing Act of 1937 (42 U.S.C. [§] 1437f)." 24 C.F.R. § 982.2(a) (1999).  The BHA, which administers the Section 8 program on behalf of HUD, see note 2, supra, was required to adopt "a written administrative plan that establishes local policies for administration of the program in accordance with HUD [regulations and] requirements."  24 C.F.R. § 982.54(a) (2001).  See 24 C.F.R. § 982.54(b) (2001).  The BHA Administrative Plan for Section 8 Programs (rev. 2011) (BHA administrative plan) provides that it may, in its discretion,

terminate a housing subsidy where the participant "has violated any Family obligation under the [Section 8] program by action or failure to act as listed in section 13.5.2 or as set forth in 24 C.F.R. § 982.551."  BHA administrative plan § 13.3.9.  See 24 C.F.R. § 982.552(c)(1)(i) (BHA "may at any time . . . terminate program assistance for a participant . . . [i]f the family violates any family obligations under the program").

 More specifically, as pertinent here, § 13.5.2(d) of the BHA administrative plan states that "[t]he Family may not commit any serious or repeated violation of the Lease."  Similarly, 24 C.F.R. § 982.551(e) provides that "[t]he family may not commit any serious or repeated violation of the lease."  Paragraph 10(a) of the lease signed by Figgs on January 25, 2011, states that she agrees "to refrain from engaging in and to cause Household member(s), guest(s), or any person under any Household member's control to refrain from engaging in <u>any criminal or illegal activity</u> in the rental Premises" (emphasis added).

 In this appeal, the BHA first contends that the judge improperly relied on G. L. c. 94C, § 32L, rather than on Federal law, to decide that Nunes had <u>not</u> engaged in any criminal activity vis-à-vis the marijuana.  As such, the BHA continues, the judge wrongly concluded that the hearing officer erred in finding that Figgs had committed a serious lease violation, predicated on Nunes's drug activity, that warranted her

termination from the Section 8 program.  Figgs counters by arguing that G. L. c. 94C, § 32L, serves a vital function in assessing the severity of a lease violation.  We begin our analysis by considering whether Nunes was engaged in any "criminal or illegal activity" in Figgs's apartment, focusing first on the marijuana and subsequently on the firearm.  To the extent that we conclude that Nunes did engage in such activity, we then consider whether the hearing officer erred in determining that it constituted a serious lease violation warranting the termination of Figgs's housing subsidy.

On November 4, 2008, Massachusetts voters approved St. 2008, c. 387, pursuant to the provisions of art. 48, The Initiative, Part V, § 1, as amended by art. 81, § 2, of the Amendments to the Massachusetts Constitution.  See Commonwealth v. Keefner, 461 Mass. 507, 509 (2012); Commonwealth v. Cruz, 459 Mass. 459, 464 (2011).  This initiative, entitled "An Act establishing a sensible State marihuana policy," was codified at G. L. c. 94C, §§ 32L-32N.  See St. 2008, c. 387.  It changed the status of possession of one ounce or less of marijuana from a criminal offense to a civil infraction.[16]  See G. L. c. 94C,

---

[16] General Laws c. 94C, § 32L, states, in relevant part: "Notwithstanding any general or special law to the contrary, possession of one ounce or less of marihuana shall only be a civil offense, subjecting an offender who is eighteen years of age or older to a civil penalty of one hundred dollars and forfeiture of the marihuana, but not to any other form of criminal or civil punishment or disqualification."

§ 32L. Notwithstanding the passage of this initiative, "[p]ossession of one ounce or less of marijuana with intent to distribute continues to be a crime, and the Commonwealth may prosecute it as such, but only where an intent to distribute is supported by probable cause." Commonwealth v. Humberto H., 466 Mass. 562, 570 (2013). See G. L. c. 94C, § 32C (a); Commonwealth v. Keefner, supra at 514.

The hearing officer found that Figgs violated paragraph 10(a) of her lease, in part, because Boston police officers, when executing the search warrant for her apartment, found two plastic bags of marijuana and "drug paraphernalia" in a bedroom used by Nunes. The hearing officer determined that Nunes was a person under Figgs's control when he engaged in drug activity in her apartment. See note 10, supra. Significantly, no evidence was presented to the hearing officer regarding the weight of the marijuana. Nonetheless, Nunes was charged with possession of a class D substance with intent to distribute, which is a crime, irrespective of the actual weight of the marijuana. The hearing officer stated that two bags of marijuana, a box of sandwich bags (which was found not in the kitchen but in the bedroom), $653 in cash, and a firearm permitted an inference not only that Nunes possessed the drugs, but also that he intended to distribute or sell them from Figgs's apartment. We conclude that the hearing officer properly could find, by a preponderance

of the evidence, that Figgs violated paragraph 10(a) of her lease because Nunes was engaged in criminal drug activity in her apartment. BHA model lease § 10(a).

We recognize that a significant rationale for the Housing Court judge's reversal of the hearing officer's decision was the fact that there was no evidence regarding the weight of the marijuana. When this fact was considered in the context of G. L. c. 94C, § 32L, decriminalizing the possession of one ounce or less of marijuana, the judge determined that there was no basis for the hearing officer to conclude that Nunes had engaged in the "crime" of possession of a class D substance. Given the judge's additional determination that there was no evidence that Nunes intended to distribute marijuana to others, the judge concluded that the hearing officer erred in finding a lease violation predicated on drug activity. In light of our conclusion in the present appeal that there was substantial evidence of possession of marijuana with intent to distribute, we do not decide whether possession of one ounce or less of marijuana alone would be sufficient to constitute an "illegal activity in the rental Premises" in violation of paragraph 10(a) of Figgs's lease. BHA model lease § 10(a).

Next, we consider whether Nunes unlawfully possessed a firearm and ammunition in Figgs's apartment. The BHA contends that, contrary to the judge's conclusion, the hearing officer

did not err in relying on the hearsay statements of a CI because they contained sufficient indicia of reliability. Further, the BHA continues, when such statements were evaluated in conjunction with other evidence presented at the informal hearing, the hearing officer properly could conclude that Nunes kept a loaded firearm in the rental premises. We agree.

As the BHA acknowledges, the hearing officer relied, in substantial part, on the hearsay statements of a CI that were contained in the search warrant affidavit of Detective Best. Pursuant to 24 C.F.R. § 982.555(e)(5) (2000), evidence "may be considered [by a hearing officer] without regard to admissibility under the rules of evidence applicable to judicial proceedings." See BHA administrative plan § 13.7.5(f). In Costa v. Fall River Hous. Auth., 453 Mass. 614, 624-625 (2009), we read this regulation's "specific reference to the inapplicability of formal rules of evidence as support for the conclusion that there is no categorical prohibition of hearsay" at a hearing on the termination of a tenant's Section 8 housing subsidy. After analyzing the due process implications of relying on such evidence, we held that "hearsay evidence may form the basis of a [public housing authority's] decision to terminate Section 8 assistance so long as that evidence contains substantial indicia of reliability." Id. at 627. See Gammons v. Massachusetts Dep't of Hous. & Community Dev., 502 F. Supp.

2d 161, 165-166 (D. Mass. 2007) (hearsay evidence is admissible in administrative proceedings, such as Section 8 hearing, where relevant).  See also Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 638 (2011) ("In the context of administrative proceedings, hearsay evidence bearing indicia of reliability constitutes admissible and substantial evidence").

In the present case, the CI told officers that he had observed a black .380 caliber firearm in Nunes's bedroom at Figgs's apartment.[17]  The CI further told officers that Nunes had been in possession of this weapon for some time, and that Nunes had been known on occasion to hide the firearm on the back porch of the apartment outside his bedroom window.[18]  As part of their investigation, officers independently observed Nunes entering and leaving the house in which Figgs's apartment was located several times over the course of approximately one week.  Based

---

[17] In his affidavit in support of the search warrant, Boston police Detective Rodney Best stated that, as part of the police investigation into Nunes, he had conducted a firearms license inquiry with respect to both Nunes and Figgs, and that no records were found.

[18] Paragraph 2 of Figgs's lease defines the rental premises as "the Unit and common areas appurtenant to the Unit" located at the specified address on Woolson Street.  See Black's Law Dictionary 123 (10th ed. 2014) (defining "appurtenant" as "[a]nnexed to a more important thing").  During the informal hearing, Figgs's counsel introduced a map of Figgs's apartment, which she had drawn, showing that the porch was appurtenant to her unit, right outside the window of the bedroom purportedly used by Nunes, as the CI had described.

on all the information set forth in Detective Best's affidavit,[19] a Superior Court judge issued a search warrant, finding that there was probable cause to believe that an illegal firearm would be found in Figgs's apartment, either on the person or in the possession of Nunes.  Once officers executed the search warrant, they found the loaded firearm on the back porch of the apartment, just as the CI had told them.  The hearsay statements of the CI bore sufficient indicia of reliability to warrant their consideration by the hearing officer.

Apart from these hearsay statements, the hearing officer also relied on police incident reports stating that, once officers searched Figgs's apartment and recovered the loaded pistol, Nunes was arrested and charged with, among other things, unlawful possession of a firearm and of ammunition.  See Costa v. Fall River Hous. Auth., 453 Mass. at 627 (police report offering detailed factual account based on personal observations of detective was sufficiently reliable to serve as basis for termination decision).  In totality, the hearing officer properly could find, by a preponderance of the evidence, that Nunes unlawfully possessed a firearm and ammunition in Figgs's apartment.  Unlawful possession of a firearm and of ammunition are criminal offenses.  See G. L. c. 269, § 10 (h).

---

[19] We note that the affidavit in support of the search warrant stated that the CI, in the past, had provided information that had led to the arrest of wanted persons, as well as to the recovery of drugs.

On the basis of the police officers' discovery of both evidence of possession of marijuana with intent to distribute and a loaded firearm in Figgs's apartment, the hearing officer properly concluded that Figgs violated paragraph 10(a) of her lease because Nunes, a person under her control, had engaged in criminal activity in the rental premises. The judge below erred in reaching a contrary conclusion.

We now turn our attention to the question whether the hearing officer abused his discretion in determining that such activity by Nunes constituted a serious lease violation warranting Figgs's termination from the Section 8 program. Absent an eviction, which did not occur in this case, Federal law does not mandate a tenant's termination from the Section 8 program for a serious lease violation.[20] Rather, a public

---

[20] Title 42 U.S.C. § 1437f(o)(7) (2012) governs leases and tenancy under the Section 8 program. It states that the housing assistance payment contract between a public housing agency and the owner of a dwelling unit shall provide that "during the term of the lease, any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants, any criminal activity that threatens the health, safety, or right to peaceful enjoyment of their residences by persons residing in the immediate vicinity of the premises, or any violent or drug-related criminal activity on or near such premises, engaged in by a tenant of any unit, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy." 42 U.S.C. § 1437f(o)(7)(D). This statutory provision pertains to termination of a tenancy by a landlord, not to termination from the Section 8 program. However, if a family is evicted from Section 8 housing for a serious lease violation, then the PHA must terminate the family's housing subsidy. See 24 C.F.R. § 982.552(b)(2) (2010).

housing authority may terminate a Section 8 housing subsidy if the family violates any of the family obligations set forth under 24 C.F.R. § 982.551, which include the obligation to "not commit any serious or repeated violation of the lease." See 24 C.F.R. § 982.552(c)(1)(i). See also BHA administrative plan § 13.3.9. The termination decision rests within the discretion of the BHA. See Costa v. Fall River Hous. Auth., 453 Mass. at 630-631; Wojcik v. Lynn Hous. Auth., 66 Mass. App. Ct. 103, 111-112 (2006). See also Carter v. Lynn Hous. Auth., 450 Mass. at 638 n.20, quoting Baldwin v. Housing Auth. of Camden, 278 F. Supp. 2d 365, 371 (D.N.J. 2003) (housing authorities not required under law, nor encouraged by HUD, to terminate assistance in every circumstance where basis for termination exists). When deciding whether to terminate a family's participation in the Section 8 program because of action or failure to act by a family member, "[t]he PHA may consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure." 24 C.F.R. § 982.552(c)(2)(i) (2010). Another circumstance that may be relevant in a termination decision, depending on the nature of the particular case, is the

fact that Massachusetts has decriminalized the possession of one ounce or less of marijuana.[21]  See G. L. c. 94C, § 32L.

Review under an abuse of discretion standard requires that we "look for decisions based on 'whimsy, caprice, or arbitrary or idiosyncratic notions.'"  Cruz v. Commonwealth, 461 Mass. 664, 670 (2012), quoting Bucchiere v. New England Tel. & Tel. Co., 396 Mass. 639, 642 (1986).  We do not disturb a decision "simply because [we] might have reached a different result; the standard of review is not substituted judgment.'"  Cruz v. Commonwealth, supra, quoting Bucchiere v. New England Tel. & Tel. Co., supra at 641.  As we already have described, the hearing officer evaluated the nature of the criminal activity by Nunes in Figgs's apartment, as well as mitigating circumstances that could point away from the termination of Figgs's Section 8 housing subsidy.  Contrast Carter v. Lynn Hous. Auth., 450 Mass. at 636-637.  We conclude that there was substantial evidence to support the hearing officer's findings as to possession of marijuana with intent to distribute and unlawful possession of a firearm and ammunition.  Accordingly, the hearing officer did not abuse his discretion in determining that Figgs had committed

---

[21] Given the factual circumstances presented in this case, we do not decide whether evidence of only the simple possession of one ounce or less of marijuana would constitute a serious lease violation permitting a tenant's termination from the Section 8 program.  Although we question whether such a termination could withstand an abuse of discretion analysis, we address neither this matter, nor whether in such circumstances G. L. c. 94C, § 32L, would have any applicability.

a serious lease violation warranting her termination from the Section 8 program.

4. <u>Conclusion</u>.  For the reasons stated in this opinion, the judgment of the Housing Court is reversed.

<u>So ordered</u>.