NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReportersjc.state.ma.us

14-P-1551                                           Appeals Court


        TINA SEALES  vs.  BOSTON HOUSING AUTHORITY.


                      No. 14-P-1551.

        Suffolk.    October 6, 2015. - November 16, 2015.

            Present:  Cohen, Meade, & Agnes, JJ.


Boston Housing Authority.  Housing Authority.  Municipal
     Corporations, Housing authority.  Practice, Civil, Action
     in nature of certiorari.  Administrative Law, Hearing,
     Substantial evidence, Judicial review.  Evidence, Hearsay.
     Controlled Substances.


     Civil action commenced in the Boston Division of the
Housing Court Department on January 23, 2014.

     The case was heard by Jeffrey M. Winik, J., on a motion for
judgment on the pleadings.


     Angela Marcolina for the defendant.
     Alex Mitchell-Munevar for the plaintiff.


     MEADE, J.  Tina Seales is a participant in the United

States Department of Housing and Urban Development (HUD) Housing

Choice Voucher Program, commonly referred to as "Section 8."

The program is administered by the Boston Housing Authority

(BHA) pursuant to 42 U.S.C. § 1437f (2012), and related HUD

regulations.  In August of 2013, Seales received notice that the BHA proposed to terminate her participation in the program due to serious or repeated violation of her lease.  Seales appealed the proposed termination.  Following an informal hearing, a hearing officer, by a decision dated January 2, 2014, upheld the termination of Seales's Section 8 housing subsidy.  Thereafter, Seales successfully sought relief in the nature of certiorari under G. L. c. 249, § 4, in the Housing Court.  On appeal from that judgment, the BHA claims that the judge erred in determining that the hearing officer improperly found that criminal or illegal activity occurred on the rental premises that constituted a serious violation of Seales's Section 8 lease.  We reverse.

Background.  Seales resided at 25 Drayton Avenue in the Dorchester section of Boston.  She was a participant in the BHA's Section 8 program and had been receiving Section 8 housing benefits for approximately fifteen years.  Seales lived with her three children, then ages sixteen, seventeen, and nineteen.  In August of 2013, Seales received notice that the BHA proposed to terminate her participation in the program due to a family member having engaged in drug-related activity and serious or

repeated violation of her lease.[1]  The BHA based its allegations on a Boston police incident report, a leased housing recertification questionnaire, family obligations, and the lease itself.

1.  The incident report.  According to the Boston police incident report, on July 9, 2013, police Officers Femino, McGrath, and Bernier saw an individual leave 25 Drayton Avenue wearing a black hooded sweatshirt and dark colored jeans and carrying a white T-shirt.  The individual was later identified as Gavin Compass.  As soon as Compass noticed the officers in their unmarked cruiser, he "clutched at his waist," turned, and sprinted back into the front door and into the common hallway of 25 Drayton Avenue.  Based on "key indicators" of Compass's behavior, and their training and experience,[2] the officers believed that Compass was in possession of a firearm.

After Compass turned and sprinted up the stairs of the building, Officers Femino and Bernier got out of the unmarked cruiser and pursued Compass into the building.  Once inside, the officers saw a discarded white T-shirt and a black firearm on the stairs of the common hallway.  The firearm was a Ruger LCP

---

[1] Section 10(a) of the lease required that Seales and her household members "refrain from engaging in any criminal or illegal activity in the rental Premises."

[2] The officers were trained in the Bureau of Alcohol, Tobacco, and Firearms characteristics of an armed gunman.

loaded with three rounds of ammunition. The officers spoke with the residents of the other two apartments in the building, received their permission to search their apartments, and determined that Compass was not in those apartments. The officers went to Seales's apartment, where a nearby witness told them that Compass had indeed run inside Seales's apartment. The officers announced themselves to those inside, received no response, and made a forced entry. Inside they discovered a shirtless Compass; Seales's nineteen year old daughter, Shurlynn; and another person, Keonte Campbell. One of Seales's minor sons was also in the apartment. The black hooded sweatshirt was located in a rear bedroom. Compass was arrested.

During a protective sweep of the residence, Sergeant Teahan located "5 individual [plastic bags] of off white rock like substance believed to be crack cocaine and 2 [plastic bags] of green leafy substance believed to be marijuana." As a result, police arrested Shurlynn and charged her with possession with intent to distribute class B and class D controlled substances in violation of G. L. c. 94C, §§ 32A and 32C. The drugs were brought to the Boston police area B2 drug safe, where they were logged and recorded.

The BHA's proposed termination of Seales's Section 8 housing assistance was due to the events described above. The BHA cited two violations of her lease and Section 8 housing

agreement, notifying Seales that her assistance would be terminated because (1) "[a] family member [Shurlynn] [had] engaged in drug related activity," and (2) Seales had committed "[s]erious or repeated violations of the lease." The police incident report, detailed above, served as evidence for both violations.

2. <u>Administrative hearing</u>. Seales administratively appealed the BHA's termination in September of 2013. At the informal hearing before a BHA hearing officer, she was afforded the opportunity to comment on the police report, and she explained that she was not home during the incident and that neither she nor her children knew Compass.

Seales claimed that her daughter did not open the door for the police because she was "afraid of retaliation" from "the local kids," and stated that her daughter "just opened the door" for Compass because there were "police everywhere" and he "just came in the house." Seales further recounted that her daughter informed her that Compass entered their home, took his shirt off, and "was just walking back and forth" when the police knocked and kicked in the door.

With regard to the narcotics recovered from her apartment, Seales explained that "the stuff was in [her] unit, but it was on [Compass]." Furthermore, as police observed the drugs in plain view in a closet, she asserted that it was Compass who had

left them behind: "[H]e must have taken the drugs or the guns or whatever . . . and put the drugs where the police found them in [the] closet."

After reviewing the police report and testimony from both Seales and the BHA leased housing division, the hearing officer determined that (1) "Shurlynn . . . did not engage in drug related activity" but that (2) "the Tenant [Seales] committed serious and repeated violations of provision 10(a) of her 7/25/2012 lease because the police found in her unit: 5 individuals [sic] plastic bags of off white rock like substance believed to be crack cocaine; 2 plastic bags of green leafy substance believed to be marijuana and [a] replica M14 shotgun BB Gun."

The hearing officer relied on the police report in evaluating the circumstances and determined that the report met the "substantial indicia of reliability" requirement for the admission of hearsay evidence in an administrative proceeding under Costa v. Fall River Hous. Authy., 453 Mass. 614, 627 (2009). In finding the police report sufficiently reliable, the hearing officer explained that (1) the officer who made the report was not anonymous and made statements based on his first-hand observations, (2) Seales confirmed the presence of illegal drugs in her apartment through her failure to deny that the substances were drugs, and (3) she did not contradict the police

report with any statement or other evidence that the hearing officer found credible. Specifically finding her statements inconsistent and unreliable, the hearing officer did not credit Seales's testimony.[3] As a result, and in consideration of the police report and Seales's implicit admission to the drugs in her apartment, the hearing officer determined that illegal drugs were present in the subsidized unit.

The hearing officer then considered a number of mitigating circumstances supporting continuation of Seales's Section 8 benefits,[4] but nevertheless concluded that the seriousness of the criminal activity at issue warranted her termination from the program. Although the hearing officer found the facts sufficient for the purpose of finding a serious or repeated

---

[3] The hearing officer explained that "the Tenant did not submit evidence to corroborate her testimony and there [are] no facts in the police report that sustain her argument [that Compass left the drugs in her apartment]." She did not credit Seales's testimony, citing its inconsistencies, including the children's knowledge of Compass's movements and whereabouts once he entered the building (which they would not have known had they not spoken with him or fabricated the information), conflicting accounts of whether the daughter observed Compass in the apartment or had been napping until the police knocked on the door, or why the children would have let Compass, an apparent stranger, in the apartment if the neighborhood was as unsafe as Seales suggested.

[4] Mitigating circumstances included (1) terminating housing assistance would be "a nightmare" for Seales because she has two disabled children collecting Social Security benefits, (2) she was living with her three children, (3) Seales was seeking "mother's work hours" so she could supervise her children, and (4) this is the first incident Seales has encountered in the fifteen years she had participated into the Section 8 program.

violation of the lease, the hearing officer also determined that the police report was not sufficient to show that Shurlynn was engaged in drug-related activity.

3. <u>Housing Court</u>. In Housing Court, Seales sought relief in the nature of certiorari pursuant to G. L. c. 249, § 4, to challenge the hearing officer's decision to terminate her Section 8 benefits. In her complaint, Seales explained the circumstances surrounding her termination, but did not make a legal argument in support her petition for relief.[5]

In his decision vacating the hearing officer's termination of benefits, the judge held that the hearing officer "committed three distinct but related legal errors" that "adversely affected Seales'[s] material rights as a participant in the Section 8 program." First, the judge concluded that the hearing officer erred in finding that the substances found in a bedroom closet were "crack" cocaine and marijuana based on the hearsay statements contained in the police report that reflected what the sergeant "<u>believed</u>" the substances to be. The judge

---

[5] Seales stated as follows in her complaint: "Section 8 has made a decision to terminate my voucher due to the facts, an individual ran into my apartment . . . whom I did not know and was arrested in my apartment. My son who is disabled heard the commotion outside [and] heard someone knock on the door. He thought it was the police knocking on the door, but it was the suspect. They arrested the suspect inside my home and charged my daughter with the crime. After going to court the magistrate [sic] my daughter not guilty and in fact dismissed the case. I would like the judge to order them not to take my section 8 away from me."

concluded that while the factual observations in the report were reliable, accurate, and admissible under Costa v. Fall River Hous. Authy., 453 Mass. at 627, there was not sufficient reliable evidence to support a finding that the substances were in fact illegal drugs. Without a "detailed factual account" in the police report, or corroborating evidence such as a certified chemical analysis or a police witness or affidavit, the judge determined: "It was legal error for the hearing officer to rely on what Sergeant Teahan thought the substances might be -- standing alone and without any competent additional evidence -- to support a finding that the substances found in Seales'[s] apartment were in fact crack cocaine and marijuana."

Second, the judge also determined that it was error for the hearing officer to find that Seales's failure to deny that the substances were drugs functioned as a tacit admission that they were in fact narcotics. The judge concluded that this finding was not supported by the record. He reasoned that Seales's testimony was "direct and consistent" and that a "plain reading of the transcript" did not provide for any admission by silence. According to the judge, the hearing officer then improperly used this "tacit admission" to bolster the reliability of the statements identifying the substances as drugs in the police report.

Third, the judge determined that the hearing officer erred in relying on these erroneous factual findings to determine that Seales "had engaged in criminal or illegal activity that constituted a serious violation of her Section 8 lease" warranting termination from the program.  The judge found that there was no evidence in the record to support the hearing officer's finding that the police found crack cocaine and marijuana in the apartment.  Thus, there was insufficient evidence to warrant termination from Section 8 housing, and the judge reversed the hearing officer's decision to terminate Seales from the Section 8 program.  The BHA then filed this timely appeal.

4.  Standard of review.  Decisions of the BHA are properly subject to review under G. L. c. 249, § 4.  See Figgs v. Boston Hous. Authy., 469 Mass. 354, 361 & n.13 (2014).  A civil action in the nature of certiorari under G. L. c. 249, § 4, is "to relieve aggrieved parties from the injustice arising from errors of law committed in proceedings affecting their justiciable rights when no other means of relief are open."[6]  Id. at 361,

_____

[6] General Laws c. 249, § 4, as amended through St. 2002, c. 393, § 20, provides that "[a] civil action in the nature of certiorari . . . may be brought in the supreme judicial or superior court or, if the matter involves any right, title or interest in land, . . . in the land court."  Under G. L. c. 185C, § 3, the Boston Division of the Housing Court Department has concurrent jurisdiction with the Superior Court Department regarding housing matters arising in the city of

quoting from <u>Swan</u> v. <u>Justices of the Superior Court</u>, 222 Mass.
542, 544 (1916).  Certiorari review of an administrative
decision requires "(1) a judicial or quasi judicial proceeding,
(2) from which there is no other reasonably adequate remedy, and
(3) a substantial injury or injustice arising from the
proceeding under review."  <u>Ibid.</u>, quoting from <u>Indeck</u> v.
<u>Clients' Sec. Bd.</u>, 450 Mass. 379, 385 & n.12 (2008).

"The scope of judicial review for an action in the nature
of certiorari under G. L. c. 249, § 4, is limited."  <u>Retirement</u>
<u>Bd. of Somerville</u> v. <u>Buonomo</u>, 467 Mass. 662, 668 (2014).  The
judge's role on certiorari review is to "correct substantial
errors of law apparent on the record adversely affecting
material rights."  <u>Doucette</u> v. <u>Massachusetts Parole Bd</u>., 86
Mass. App. Ct. 531, 540-541 (2014), quoting from <u>Firearms</u>
<u>Records Bureau</u> v. <u>Simkin</u>, 466 Mass. 168, 180 (2013).  "In the
absence of substantial legal error, we review the record to
determine whether that decision was supported by substantial
evidence."  <u>Durbin</u> v. <u>Selectmen of Kingston</u>, 62 Mass. App. Ct.
1, 5 (2004).[7]  In reviewing an appeal of a decision in a

Boston.  Therefore, the Housing Court has concurrent
jurisdiction under G. L. c. 249, § 4, with the Superior Court to
review public housing authority decisions regarding housing
matters in the city.

[7] Substantial evidence is defined as "such evidence as a
reasonable mind might accept as adequate to support a
conclusion."  <u>Durbin</u> v. <u>Selectmen of Kingston</u>, <u>supra</u> at 6,

certiorari proceeding, the reviewing court may not make de novo determinations or draw different inferences from the facts, make different judgments as to witness credibility, or disturb a choice made between conflicting inferences or views of the facts, "even if it might justifiably make a different choice were the case before it de novo."  Id. at 6.

We therefore review the administrative record provided by the parties to determine whether the "judge correctly ruled that the hearing officer committed legal errors . . . adversely affect[ing] [Seales's] material rights."  Figgs v. Boston Hous. Authy., 469 Mass. at 362.  To do so, we examine the record to determine whether substantial evidence supported the hearing officer's findings.[8]  Ibid.

5.  Discussion.  Through the Section 8 program, Congress authorized the Secretary of HUD to develop a program for assistance payments to aid "low-income families in obtaining a decent place to live and [to promote] economically mixed housing."  42 U.S.C. § 1437f(a) (2012).  HUD provides funds to public housing agencies, including the BHA, who then administer

---

quoting from New Boston Garden Corp. v. Assessors of Boston, 383 Mass. 456, 466 (1981).

[8] The hearing officer's factual findings "shall be based on a preponderance of the evidence presented at the hearing."  24 C.F.R. § 982.555(e)(6) (2015).  A preponderance standard requires that the trier of fact find that "what is sought to be proved is more probably true than not true."  Figgs v. Boston Hous. Authy., supra at 362 n.15.

Section 8 benefits.  See 24 C.F.R. § 982.1(a)(1) (2015); Figgs v. Boston Hous. Authy., supra at 363.  Under the BHA administrative plan for Section 8 programs, the BHA has discretion to terminate a housing subsidy where a participant violates "any Family obligation under the program by action or failure to act as listed in section 13.5.2 or as set forth in 24 C.F.R. § 982.5851."  BHA administrative plan § 13.3.9.  Section 13.5.2 of the BHA administrative plan contains the Section 8 "Family obligations" and provides that "[v]iolation of the Family obligations by an act or a failure to act may result in termination of assistance."  More specifically, "[t]he Family may not commit any serious or repeated violation of the Lease."  BHA administrative plan § 13.5.2(d).  Paragraph 10(a) of Seales's lease, signed on July 25, 2012, demonstrates her understanding of this requirement and her agreement "to refrain from engaging in and to cause Household member(s), guest(s), or any person under any Household member's control to refrain from engaging in any criminal or illegal activity in the rental Premises."

On appeal, the BHA claims that the judge erred when he failed to credit the police report relied upon by the hearing officer.  More specifically, the BHA claims the hearing officer properly credited the report that contained detailed firsthand observations as sufficient to support a finding of illegal

activity constituting a serious lease violation in order to uphold termination of Seales's Section 8 benefits.  We agree.

In Costa v. Fall River Hous. Authy., 453 Mass. at 627, the Supreme Judicial Court held that hearsay evidence, such as a police report, "may form the basis of a [housing authority's] decision to terminate Section 8 assistance so long as that evidence contains substantial indicia of reliability."[9]  Not all hearsay is admissible, however.  In fact, the court cautioned against relying on "anonymous, uncorroborated, or contradicted" hearsay.  Id. at 626.

Here, the hearing officer found the police incident report to be admissible hearsay not subject to any of the concerns raised in Costa.  In her findings, the hearing officer indicated that the statements in the police report contained "substantial indicia of reliability" because the report was "not anonymous." The report consisted of "first hand observations of the Reporting Officer," and the statements made in the report were based on those observations.  See id. at 627.  The report contained both a comprehensive and detailed factual account of the encounter between the police, Compass, and Seales's children, as well as detailed statements identifying the

---

[9] In Costa, supra, the Supreme Judicial Court held that the police report in that case was admissible because it "offered a detailed factual account based on the personal observations of the detective, and it is a crime for a police officer to file a false report."

substances found in Seales's apartment as five plastic bags of an "off white rock like substance believed to be cocaine" as well as two bags of a "green leafy substance believed to be marijuana." The hearing officer relied on this thorough account to support a finding that police had, in fact, observed illegal drugs in Seales's apartment.

Despite meeting the "substantial indicia of reliability" standard of Costa, the judge nevertheless ruled that the hearing officer's reliance on the report amounted to legal error. While the judge conceded that the facts contained in the police report were sufficiently reliable, he ruled that the police officer's "belief" that the substances were crack cocaine and marijuana was not sufficiently reliable to support a finding that the substances actually were illegal drugs absent corroborating testimony, affidavits, or laboratory reports.[10] In focusing on

---

[10] In reaching this conclusion, the judge relied on Commonwealth v. Dawson, 399 Mass. 465, 467 (1987), for the proposition that proof that a substance is a particular drug may be proven by circumstantial evidence, but not by testimony or a police report alone. The judge's reliance was misplaced. Dawson was a criminal prosecution with the identity of cocaine missing from an evidence control room at issue. The court held that a substance can be identified as cocaine through the testimony of experienced police officers rather than through laboratory analysis or testimony by a qualified chemist. Id. at 466-467. Despite that, the court also remarked (a remark the judge here relied on), "We suspect it would be a rare case in which a witness's statement that a particular substance looked like a controlled substance would alone be sufficient to support a conviction." Id. at 467. The problem with the judge's reliance on this dicta is that Dawson involved a criminal case

what the police officer <u>believed</u> but did not conclusively state, the judge improperly discounted both the reliability inherent in a detailed police incident report, as well as the hearing officer's permissible inferences regarding the details in the report. The police report here, combined with a commonsense understanding that this police sergeant would have the training and experience to identify illegal drugs, was sufficient to support an inference and finding that the substances in Seales's apartment were correctly identified as crack cocaine and marijuana.[11] See <u>Figgs</u> v. <u>Boston Hous. Authy.</u>, 469 Mass. at 355,

---

where any conviction must be based on proof beyond a reasonable doubt. Here, in this civil administrative proceeding, the burden was a preponderance of the evidence. While the court in <u>Dawson</u> expressed doubt that a statement alone could support a conviction beyond a reasonable doubt, nothing in <u>Dawson</u> precluded a finding by a preponderance of the evidence that a reliable, detailed police statement is sufficient to identify a substance as an illegal drug.

[11] The hearing officer also found the police report sufficiently reliable because Seales did not contradict any of the statements contained in the report or deny that there were drugs in her apartment. She considered Seales's failure to deny that the police had found drugs to be a tacit admission of their presence. Although she considered the police report and tacit admission together in finding that the police report was reliable, we need not consider this aspect of the hearing officer's reasoning because the police report itself was sufficiently reliable to support her finding that the substances in Seales's apartment were illegal drugs. See <u>Costa</u> v. <u>Fall River Hous. Authy.</u>, 453 Mass. at 627 (holding police report with "detailed factual account based on the personal observations of the detective" sufficiently reliable); <u>Figgs</u> v. <u>Boston Hous. Authy.</u>, 469 Mass. at 357, 364-365 (hearing officer could properly find unlawful possession by preponderance of evidence

364-365 (holding police report identifying "two bags of a leafy green substance believed to be marijuana," plastic bags, $653 in cash, and a firearm allowed inference of possession and intent to distribute or sell [emphasis added]). We add that here, as in Costa, the reliability of the report is further bolstered by the fact that it is a crime to file a false police report. See Costa v. Fall River Hous. Authy., 453 Mass. at 627; G. L. c. 268, § 6A.

Therefore, there was substantial evidence to permit the hearing officer to find that illegal drugs were found in Seales's apartment. The judge improperly disturbed this finding and exceeded his authority on certiorari review by drawing his own inference on the reliability of the sergeant's belief. See Durbin v. Selectmen of Kingston, supra at 6 (reviewing court cannot "draw different inferences from the facts; it cannot disturb a choice made below between two fairly conflicting inferences or views of the facts").

Because the hearing officer could properly find that there were illegal drugs in Seales's apartment, it was also properly within her discretion to conclude that Seales violated her lease because a person under her control engaged in criminal or illegal activity in the rental premises. Whether the activity

based on police incident report and confidential informant hearsay statements).

constituted a serious or repeated violation of section 10(a) of the lease, and whether Seales's Section 8 benefits should be terminated based on this violation, fell squarely within the hearing officer's discretion. See Costa v. Fall River Hous. Authy., supra at 630-631. The BHA claims that the hearing officer's decision to terminate Seales's Section 8 benefits was not an abuse of discretion. We agree.

To determine if the hearing officer abused her discretion in reaching these conclusions requires that that we "look for decisions based on 'whimsy, caprice, or arbitrary or idiosyncratic notions.'" Figgs v. Boston Hous. Authy., supra at 368, quoting from Cruz v. Commonwealth, 461 Mass, 644, 670 (2012). We do not substitute our judgment or disturb a decision because we may have decided differently. Ibid.

We are satisfied that the hearing officer considered and weighed the evidence before her, including the police report, hearing testimony, and any potentially mitigating factors in Seales's favor before determining that termination was indeed appropriate.[12] Contrast Carter v. Lynn Hous. Authy., 450 Mass. 626, 636-637 (2008). We conclude that there was substantial

---

[12] Although not challenged on appeal, the hearing officer's decision at times reported testimony without indicating whether the testimony was credible. At other times, explicit credibility determinations were made. A clear statement of what testimony was found credible assists in meaningful appellate review. See, e.g., Friedman v. Board of Registration in Med., 408 Mass. 474, 476 (1990), cert. denied, 498 U.S. 1107 (1991).

evidence to support the hearing officer's finding that illegal drugs were in Seales's apartment, which constituted a serious violation of her lease.  Therefore, the hearing officer did not abuse her discretion in finding that Seales's conduct warranted terminating her participation in the Section 8 program.

<u>Judgment reversed</u>.
