JANICE INDECK vs. CLIENTS' SECURITY BOARD.

Suffolk. November 8, 2007. - January 10, 2008.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Clients' Security Board. Practice, Civil,* Action in nature of certiorari. *Attorney at Law,* Attorney-client relationship.

A discretionary decision of the Clients' Security Board (board) to deny a claim for reimbursement arising from losses caused to a client by the defalcation of the client's attorney was not subject to certiorari review, where S.J.C. Rule 4:05, § 1, as amended, 440 Mass. 1340 (2004), expressly precluded such review [383-384], and where, at any rate, the claimant could not meet the requirements for certiorari review under G. L. c. 249, § 4, in that the claimant did not have a justiciable or material right to any such payment [384-386] and the record of the board's decision did not reflect a substantial error of law [386].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on August 4, 2006.

The case was considered by *Ireland,* J.

*Kara Larzelere (Owen Gallagher* with her) for the plaintiff.

*Christine Baily,* Assistant Attorney General, for the defendant.

CORDY, J. The Clients' Security Fund (Fund) was established by the Supreme Judicial Court (court) in 1974. S.J.C. Rule 4:04, 365 Mass. 717 (1974). "The purpose of the Fund is to discharge, as far as practicable and in a reasonable manner, the collective professional responsibility of the members of the Massachusetts bar with respect to losses caused to the public by defalcation of members of the bar, acting either as attorneys or as fiduciaries . . . ." S.J.C. Rule 4:04, as amended, 428 Mass. 1302 (1998). The Fund's resources come not through an appropriation of public monies, but from the annual registration fees paid by Massachusetts attorneys to the Board of Bar Overseers. S.J.C. Rule 4:03, as amended, 430 Mass. 1328 (2000). S.J.C. Rule 4:04. The assets of the Fund are held in trust by the Clients' Security Board (board), which consists of seven mem-

bers of the Massachusetts bar appointed by the court. *Id.* The court retains supervisory authority over the board (and the Fund), including the authority to approve its rules.[1] See S.J.C. Rules 4:04-4:09, as amended; Rules 1 and 12 of the Rules of the Clients' Security Board (2007).

In fulfilling its essential purpose, the board is to "consider applications [from] clients for reimbursement of losses . . . and may honor, pay, or reject such claims in whole or in part." S.J.C. Rule 4:05, § 1, 365 Mass. 718 (1974). The board's determinations are discretionary. "All reimbursements shall be a matter of grace, not right, and no client . . . or other person shall have any right or interest in the Fund." *Id.*

This case requires us to decide whether a decision of the board with respect to the reimbursement of a claim is subject to certiorari review pursuant to G. L. c. 249, § 4,[2] where S.J.C. Rule 4:05, § 1, as amended, 440 Mass. 1349 (2004), provides that "[n]o decision to grant or deny reimbursement shall be subject to judicial review in a court of either appellate or original jurisdiction." We conclude that it is not.

1. *Procedural history.* On August 4, 2006, Janice Indeck filed a complaint in the nature of certiorari (G. L. c. 249, § 4) with the Supreme Judicial Court for Suffolk County, seeking review of the board's decision to award her $150,000 on a claim that she had suffered $569,000 in losses from a defalcation by her previous attorney, Morris Goldings.[3] On September 27, 2006, on a motion of the board, the single justice dismissed Indeck's

---

[1]In accordance with the Rules of the Supreme Judicial Court, the Clients' Security Board (board) also must provide the court with an annual written report regarding the administration of the Fund, and must undergo an independent audit at least once a year. See S.J.C. Rule 4:06, §§ 2, 3, 365 Mass. 719 (1974).

[2]General Laws c. 249, § 4, states in relevant part:

"A civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal, may be brought in the supreme judicial or superior court . . . . The court may enter judgment quashing or affirming such proceedings or such other judgment as justice may require."

[3]On August 14, 2006, Indeck filed her first amended complaint in which she sought (1) declaratory relief pursuant to G. L. c. 231A, § 2; (2) judicial

complaint for lack of subject matter jurisdiction. This appeal followed.

2. *Facts.* On a motion to dismiss, we accept the factual allegations as set forth in the complaint as true. *Harvard Law Sch. Coalition for Civil Rights* v. *President & Fellows of Harvard College*, 413 Mass. 66, 68 (1992). In this case, the material facts are not in dispute. From 1977 through December, 2000, Attorney Goldings represented Indeck in a variety of legal matters, including her divorce, child support proceedings, estate planning, and real estate transactions. Beginning in 1982, Indeck gradually entrusted Goldings with the investment of her money, which Goldings (falsely) claimed he would deposit in bank accounts where it would earn tax-free interest. Goldings represented that he would make periodic (monthly or quarterly) payments to her of the interest earned in these accounts.

By 1989, Indeck had entrusted Goldings with a net total of $569,000, which she understood Goldings continued to hold in bank accounts. These funds represented her life savings.[4] Goldings made interest payments to Indeck until December, 2000, but not thereafter. On inquiry, Indeck learned that Goldings was on extended sick leave from his firm. At about this time, Indeck also began to see newspaper coverage alleging that Goldings had misappropriated his clients' funds. On February 8, 2001, Goldings's license to practice law was suspended pending further proceedings before the Board of Bar Overseers.[5] The precise total of the interest payments Indeck received from Goldings during the period from 1982 through 2000 is unknown, although Indeck has estimated it to be $912,600.[6]

Between January and March, 2001, Goldings assured Indeck

review in the nature of certiorari under G. L. c. 249, § 4; and (3) relief pursuant to G. L. c. 211, § 3. The only issue Indeck raises on appeal is whether the board's decision is reviewable under G. L. c. 249, § 4.

[4] The $569,000 included funds received by Indeck in her 1982 divorce, the proceeds from the 1983 sale of her home, and other accumulated savings.

[5] On April 16, 2002, Goldings filed an affidavit of resignation pursuant to S.J.C. Rule 4:01, § 15 (2), as appearing in 425 Mass. 1319 (1997), and this court entered a judgment of disbarment on April 17, 2002. Goldings also faced Federal indictments on, inter alia, counts of embezzlement, mail fraud, and money laundering.

[6] This estimate was set forth in an April 2, 2003, letter sent by Indeck's attorney to the Clients' Security Board (board) at the time it was considering

that he would return her money. When he did not, Indeck obtained other legal representation and on March 29, 2001, filed a Chapter 7 involuntary bankruptcy petition against Goldings and a proof of claim for $590,332, which included the $569,000 she had entrusted to him and $21,332 in unpaid interest.[7] On April 6, 2001, Goldings's former law firm, Mahoney Hawkes, LLP, filed a Chapter 11 petition for bankruptcy, and Indeck filed a proof of claim in that proceeding for the same amount.

On August 27, 2002, Indeck submitted a claim to the board for reimbursement of the $569,000. On March 20, 2003, the board conducted a hearing on the claim, in which Indeck participated by telephone, and which her attorney attended in person.

At its August 14, 2003, meeting, the board concluded that while Indeck suffered a loss as a result of defalcations by Goldings, the more than $900,000 Indeck received from him between 1982 and 2000 "mitigated that loss." In accordance with its practice of treating distributions that a client receives from an attorney who has been entrusted with funds for investment purposes as a return of the principal originally entrusted to that attorney, the board decided that Indeck "retained no compensable claim." Nevertheless, the board decided to award Indeck $150,000, under a provision of its rules that allows the board to recognize and compensate a claim "that would otherwise be excluded" in "cases of hardship," in this case the loss by an elderly client of her life savings.[8] See Rule 2 (f) of the Rules of the Clients' Security Board (2007). As a condition of receiving this award, Indeck executed a subrogation agreement and an assignment, entitling the board to claim any funds (up to the $150,000 award) collected in the bankruptcy proceedings against Goldings's law firm.

---

her claim for reimbursement. Indeck does not have documentation of each payment received from Goldings, in part because he did not provide her with much information, and thereby can only estimate the amount she received over the eighteen-year period. When Indeck petitioned the board for rehearing, she recalibrated the estimate to $906,659.50, using average municipal bond interest rates as a model.

[7]The Goldings bankruptcy proceeding did not result in any distributions to Indeck because Goldings had virtually no assets for liquidation and disbursement to creditors.

[8]The board notified Indeck of the $150,000 award by means of a written communication that did not explain the basis of its decision.

On June 2, 2006, the bankruptcy trustee in the Mahoney Hawkes, LLP, proceeding recognized Indeck's claim in the amount of $569,000 as the "principal" that Goldings had misappropriated from her.[9] The firm's malpractice insurance covered claims arising out of the law firm's negligent supervision of its attorneys, and the insurance carrier agreed to distribute $6.5 million (an amount significantly less than the losses incurred) to creditors, including Indeck, who were clients of Goldings.

On June 8, 2006, immediately following the recognition of her $569,000 claim by the bankruptcy trustee, Indeck filed a petition with the board, essentially asking it to reconsider its decision. Indeck contended that the payments she received from Goldings should be considered return on her investment, rather than return of principal, that she therefore had a compensable claim of $569,000, and that the board should reimburse her in this amount, less any monies received in the bankruptcy proceeding.[10] On June 15, 2006, the board denied her petition.

3. *Discussion.* S.J.C. Rule 4:05, § 1, as amended, 440 Mass. 1349 (2004), was amended to include the following language: "No decision to grant or deny reimbursement shall be subject to judicial review in a court of either appellate or original jurisdiction." This amendment was proposed to the court by the board in September, 2003, in response to the holding in *Ruci* v. *Clients' Sec. Bd.*, 53 Mass. App. Ct. 737, 739-740 (2002), allowing certiorari review of a board decision dismissing a claim for compensation. The proposed amendment was published for comment in the Massachusetts Lawyers Weekly on October 13, 2003, with a closing date for comments of November 14, 2003. No comments were received. The rule change was then adopted

---

[9]By order of the Bankruptcy Court, the recognized claim did not include interest due, attorney's fees, or penalties.

[10]In June, 2006, the bankruptcy trustee in the Mahoney Hawkes, LLC, bankruptcy proceeding issued an initial distribution to all claimants with undisputed claims in the amount of twenty per cent of their claims. In Indeck's case, twenty per cent of her $569,000 loss was $113,800, which, pursuant to the subrogation agreement, was paid directly to the board. In November or December, 2006, the bankruptcy trustee made a second distribution of $113,800; $36,200 of this distribution was paid directly to the board. Indeck received the remainder, less attorney's fees. The board, therefore, has been fully reimbursed. Based on the bankruptcy trustee's estimates, Indeck does not anticipate any further return from the Mahoney Hawkes, LLC, bankruptcy proceeding.

by the court on December 11, 2003, effective January 1, 2004. In the circumstances, there can be little doubt that the rule, as amended, was intended to foreclose all manner of judicial review of the board's discretionary reimbursement decisions, including certiorari review brought pursuant to G. L. c. 249, § 4.[11]

We have in other circumstances concluded that certiorari review is not necessarily precluded even if a decision is declared (by rule or statute) to be final or unreviewable. See, e.g., *MacKenzie* v. *School Comm. of Ipswich*, 342 Mass. 612, 614 (1961) (if administrative review unavailable, "certiorari is the only way of reviewing decisions declared final by statute"); *Natick* v. *Massachusetts Dep't of Pub. Welfare*, 341 Mass. 618, 620 (1961) ("It is well established that certiorari lies notwithstanding provisions barring appeal by *any* party" [emphasis in original]); *Gudanowski* v. *Northbridge*, 17 Mass. App. Ct. 414, 417 (1984) (allowing certiorari review of county commissioner decisions, even though applicable statute considered those decisions final). However, even assuming that S.J.C. Rule 4:05 does not, on its face, preclude certiorari review, such review is available only if the complaint is consistent with the purpose of certiorari, and meets its requisite elements.

"Although certiorari is provided for by G. L. c. 249, § 4, its origins are in the common law, and the requirements which give it life were stated in *Swan* v. *Superior Court*, 222 Mass. 542, 544 [1916]." *Boston Edison Co.* v. *Selectmen of Concord*, 355 Mass. 79, 82 (1968). In *Swan* v. *Superior Court, supra,* the court held that the writ's "appropriate function is to relieve aggrieved parties from the injustice arising from errors of law committed in proceedings affecting their justiciable rights when no other means of relief are open."

---

[11]Indeck does not raise as a claim in this appeal that the amendment to S.J.C. Rule 4:05, § 1, as amended, 440 Mass. 1349 (2004), should not apply to her case because it would retroactively affect her substantive rights. Such a claim would be unavailing in any event, where Indeck does not have a substantive right to a distribution from the board, the revised rule is procedural, and the stage of the proceedings effected by the revision (the appeal) did not begin until well after the effective date of the amendment. See *Porter* v. *Clerk of the Superior Court*, 368 Mass. 116, 118 (1975) (in deciding whether to give amended statute retroactive effect, we "look to the stage of the proceedings affected by the change and determine whether that stage has been completed on the effective date of the amendment").

We have also described certiorari as a "limited procedure reserved for correction of substantial errors of law apparent on the record created before a judicial or quasi judicial tribunal." *School Comm. of Hudson* v. *Board of Educ.*, 448 Mass. 565, 575-576 (2007). To obtain certiorari review of an administrative decision, the following three elements must be present: (1) a judicial or quasi judicial proceeding, (2) from which there is no other reasonably adequate remedy, and (3) a substantial injury or injustice arising from the proceeding under review. *School Comm. of Hudson* v. *Board of Educ.*, supra at 576, quoting *Warren* v. *Hazardous Waste Facility Site Safety Council*, 392 Mass. 107, 117 (1984); *Boston Edison Co.* v. *Selectmen of Concord*, supra at 83.[12]

We need not decide whether the board's proceedings are judicial or quasi judicial in nature, or whether there is a reasonably adequate remedy in this case other than judicial review, because the availability of certiorari presupposes that the party seeking review has a "justiciable" right. *Swan* v. *Superior Court*, supra. See *Sheriff of Plymouth County* v. *Plymouth County Personnel Bd.*, 440 Mass. 708, 710 (2004), quoting *Massachusetts Bay Transp. Auth.* v. *Auditor of the Commonwealth*, 430 Mass. 783, 790 (2000) (court will "correct only a substantial error of law . . . which adversely affects a material right of the plaintiff"). Plainly, Indeck does not have a justiciable or material right to any payment from the Fund even though she suffered a loss at Goldings's hands. Section 1 of S.J.C. Rule 4:05 expressly provides that "[a]ll reimbursements shall be a matter of grace, not right, and no client . . . shall have any right or interest in the Fund." Ultimately, the purpose of disbursements by the board is "to discharge, as far as practicable . . . the

[12]We have also described the requisite elements for certiorari as a four-part test. "The requisite elements for availability of certiorari are (1) a judicial or quasi judicial proceeding (2) from which there is no other reasonably adequate remedy (3) to correct substantial error of law apparent on the record (4) that has resulted in manifest injustice to the plaintiff or an adverse impact on the real interests of the general public." *State Bd. of Retirement* v. *Woodward*, 446 Mass. 698, 703-704 (2006). The four-part test includes the purpose of certiorari review (which is to correct substantial errors of law apparent on the record) as an element of its availability. If no substantial error of law is apparent on the record, certiorari review will yield no relief. The tests are, therefore, functionally equivalent.

collective professional responsibility of the members of the
Massachusetts bar with respect to losses caused to the public by
defalcations of members of the bar." S.J.C. Rule 4:04, § 1.
That purpose does not vest a private right in wronged clients to
a reimbursement of their lost funds, nor does it create an expecta-
tion of such reimbursement. Consequently, board decisions —
relating to the reimbursement of claims — do not give rise to the
substantial injury or injustice necessary for certiorari review.

Additionally, the record of the board's decision does not
reflect a substantial error of law. The board has broad discretion
to "honor, pay, or reject" claims for reimbursement. S.J.C. Rule
4:05, § 1. In exercising this discretion, this court has directed
the board to "attempt in the public interest to establish fair,
reasonable and consistent principles for the allowance and rejec-
tion of claims." S.J.C. Rule 4:05, § 3. The court has also directed
the board to consider a number of factors unrelated to the merits
of any particular claim, including: "the amounts available . . .
to the Fund for payment of claims; the size and number of
claims . . . ; the total amount of losses caused by defalcations
of any one attorney . . . ; and the unreimbursed amounts of
claims theretofore recognized by the Board as meriting reim-
bursement but for which complete reimbursement has not been
made." S.J.C. Rule 4:05, § 3 (1). In addition, the board is to
consider "[t]he amount of the claimant's loss as compared with
the amount of . . . losses sustained by other applicants . . .
and the degree of hardship suffered by the claimant as compared
with that suffered by other applicants." S.J.C. Rule 4:05,
§ 3 (2). In fulfilling these directives, the board's policy of treat-
ing the distributions that a client receives from an attorney who
has been entrusted with sums of money for investment purposes
as a return of the principal is not unreasonable.[13]

The petitioner, therefore, cannot meet the requirements for

---

[13]The board is mandated to attempt to develop an equitable process for
deciding claims. S.J.C. Rule 4:05, § 3. If the board were to disregard this
obligation entirely, a complainant could bring that to the court's attention for
consideration as an administrative matter. As we held in *Matter of a Request
for an Investigation of an Attorney*, 449 Mass. 1013, 1014 (2007), regarding
the petitioner's attempt to challenge a decision of the Board of Bar Overseers

certiorari review under G. L. c. 249, § 4, and her complaint for relief was properly dismissed.

*Judgment affirmed.*

---

not to prosecute his complaint:

> "A complainant is free to bring to the court's attention a matter of concern regarding the actions of bar counsel or the [Board of Bar Overseers] so that the court can decide administratively how to handle the matter, but he or she cannot commence a judicial action challenging bar counsel's decision and seek a judicial order compelling bar counsel to act in a certain way."