SUPREME JUDICIAL COURT 
 
 CUMBERLAND FARMS, INC. vs. BOARD OF HEALTH OF BRAINTREE

 
 Docket:
 SJC-13613
 
 
 Dates:
 November 6, 2024 - January 15, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Wolohojian, JJ.
 
 
 County:
 Norfolk
 

 
 Keywords:
 Tobacco. Municipal Corporations, Board of health, Regulations. Administrative Law, Regulations. Department of Public Health. Statute, Construction. Practice, Civil, Action in nature of certiorari, Waiver. Waiver.
 
 

             Civil action commenced in the Superior Court Department on July 10, 2023.
            The case was heard by Brian A. Davis, J., on a motion for judgment on the pleadings.
            The Supreme Judicial Court granted an application for direct appellate review.
            Joshua D. Dunlap for the plaintiff.
            Roger L. Smerage for the defendant.
            Cheryl Sbarra & Christopher Banthin, for Massachusetts Association of Health Boards & another, amici curiae, submitted a brief.
            Andrea Joy Campbell, Attorney General, Emily Swanson & Kimberly Parr, Assistant Attorneys General, for Department of Public Health, amicus curiae, submitted a brief.
            WOLOHOJIAN, J.  While conducting a routine inspection, a Braintree tobacco compliance and inspections officer observed an open container of Jazz brand "Black & Mild" cigars (Black & Mild cigars) on display alongside other tobacco products on a shelf behind the cash register of a convenience store in Braintree.  Based on, among other things, the inspection officer's observations, the board of health of Braintree (board) found that the store had violated State and local tobacco laws and regulations by offering a flavored tobacco product for sale, and imposed a $1,000 fine.  The plaintiff raises two main arguments in this appeal.  The first is that because the store did not intend to sell the product and its point-of-sale system would have prevented the product from being rung up and sold, the board's finding that the store "offered for sale" a flavored tobacco product was unsupported by substantial evidence or was erroneous as a matter of law.  The plaintiff's second argument is that the board acted outside its authority in administratively imposing the $1,000 fine and its proceedings were procedurally defective.  We conclude that the store's manner of placement and display of the product, which would have led a customer reasonably to conclude that the product was available for purchase, supported the board's finding that it was being "offered for sale."  We further conclude that the legislative and regulatory scheme governing the sale of tobacco products in Massachusetts expressly contemplates enforcement by local boards of health and permits them to administratively impose the mandatory penalties.  We also conclude that no procedural irregularities fatally marred the board's actions.  We accordingly affirm the judgment of the Superior Court in this action in the nature of certiorari.[1]
            Background.  Cumberland Farms, Inc. (Cumberland Farms) operates a convenience store on Washington Street in Braintree (Braintree or town).  On April 12, 2023, a tobacco and compliance inspections officer for the town conducted a routine inspection of the store's premises.  The inspection officer observed an open display box of Black & Mild cigars on a shelf behind the cash register, where it was situated alongside other tobacco products.  It is undisputed that Black & Mild cigars are a flavored tobacco product within the meaning of "An Act modernizing tobacco control" (act), St. 2019, c. 133, § 25, inserting G. L. c. 270, § 28, and regulations issued pursuant to the act by the Department of Public Health (DPH), 105 Code Mass. Regs. § 665.005 (2020).  Accordingly, they may be neither sold nor offered for sale within the Commonwealth.  G. L. c. 270, § 28 (b).  105 Code Mass. Regs. § 665.010(D) (2020).
            On April 24, 2023, the town's department of municipal licenses and inspection issued a notice of violation to Cumberland Farms, stating that the store had been "found to be storing and offering for sale to the public . . . flavored products" in violation of the act and State and local tobacco regulations.  The notice advised that those same laws and regulations established an escalating series of fines and penalties, with a mandatory $1,000 fine for a first violation.  See G. L. c. 270, § 28 (e);[2] 105 Code Mass. Regs. § 665.045(A) (2020).  A Cumberland Farms representative was ordered to appear before the board at a public hearing the following month.
            At that public hearing, the inspection officer testified to her observations, as set out above.  In addition, the board had before it photographs taken by the inspection officer showing the product in plain view on a shelf at the store, where it was displayed among other tobacco products offered for sale.[3]  Cumberland Farms's district manager, who appeared at the hearing on behalf of the company, acknowledged that Black & Mild cigars are flavored tobacco products.  He explained that a mistake had been made at the shipping warehouse, and he acknowledged that the product should not have been delivered to the store.  He further stated that "human error was involved and it was delivered to the site and it was put up for sale."  Nonetheless, the district manager believed that no Black & Mild cigars had actually been sold because the store's point-of-sale system would have prevented a store clerk from ringing the product through the cash register.
            The board found that the store had violated State and town tobacco regulations and imposed the mandatory $1,000 penalty for a first violation.[4]  The district manager was orally informed of the board's decision at the conclusion of the hearing.
            Although no written notice of the board's decision had yet issued, Cumberland Farms wrote to the town and the board the following day, asking that the board's decision be modified or withdrawn.  Cumberland Farms raised several points of contention in support of its request, only one of which it continues to press on appeal:[5]  namely, that because the point-of-sale system was programmed to prevent the product from ringing up at the register, Cumberland Farms did not "offer [the product] for sale."
            The town solicitor responded in writing seven days later, explaining that because the Black & Mild cigars were offered for sale, the point-of-sale system was "irrelevant," and that "[t]he presence of flavored tobacco products on a shelf where tobacco products are normally offered for sale creates a valid presumption that the products are offered for sale, in violation of state and local law."  Citing 105 Code Mass. Regs. § 665.055, the town solicitor's letter closed by stating that Cumberland Farms could seek relief from the board's decision in any court of competent jurisdiction.
            Thereafter, Cumberland Farms filed the underlying verified complaint in the Superior Court seeking certiorari review of the board's decision, pursuant to G. L. c. 249, § 4, and a declaratory judgment.[6]  On cross motions for judgment on the pleadings,[7] the judge concluded that there was substantial evidence to support the board's finding that the store had offered a flavored tobacco product for sale.  The judge also concluded that the board was within its authority to impose a $1,000 fine.[8]  Cumberland Farms appealed, and we granted its application for direct appellate review.
            Discussion.  Before turning to the specific arguments raised in this appeal, we pause to give a brief overview of the statutory and regulatory scheme that applies to the sale of flavored tobacco products in the Commonwealth generally and in Braintree in particular.  In 2019, the Legislature enacted G. L. c. 270, § 28, to prohibit the sale, distribution, or offering for sale of flavored tobacco products except by smoking bars:
"No person, retailer or manufacturer shall sell, distribute, cause to be sold or distributed, offer for sale any flavored tobacco product or tobacco product flavor enhancer in any retail establishment, online or through any other means to any consumer in the commonwealth . . . ."
St. 2019, c. 133, § 25.[9]  Persons who violate § 28 are subject to the same fines that are imposed on those who sell tobacco products to persons who are under age twenty-one:  $1,000 for a first offense, $2,000 for a second offense, and $5,000 for a third or subsequent offense.  See G. L. c. 270, § 6 (d).  The Legislature explicitly authorized DPH to "promulgate such procedures, rules or regulations as it deems necessary to implement" § 28's ban on flavored tobacco products.  G. L. c. 270, § 28 (g).
            Pursuant to this authorization, DPH promulgated its "minimum standards for retail sale of tobacco and electronic nicotine delivery systems" (DPH regulations).  See 105 Code Mass. Regs. §§ 665.000.  The DPH regulations mirror the provisions of G. L. c. 270, § 28, with respect to what constitutes prohibited conduct, and they also track the provisions of § 6 with respect to the structure of escalating fines and penalties for repeated violations.  Specifically, 105 Code Mass. Regs. § 665.010(D) prohibits the sale, distribution, and offering for sale of flavored tobacco products to the same extent as does § 28 (b),[10] and 105 Code Mass. Regs. § 665.045 establishes a structure of escalating fines and suspensions consistent with G. L. c. 270, § 6 (d).[11]  
            The DPH regulations provide that, absent a contrary express statutory provision, they may be enforced by local boards of health:
"Unless otherwise expressly provided in any general law to the contrary, each board of health may enforce 105 [Code Mass. Regs. §§] 665.000, or otherwise at law or in equity in the same manner that local rules and regulations are enforced."  
105 Code Mass. Regs. § 665.055(B)(1).  At the same time, each municipality remains free to adopt its own rules and regulations, provided that those local regulations do "not conflict with regulations promulgated by [DPH] or state or federal law."  105 Code Mass. Regs. § 665.057.
            Braintree had a preexisting set of tobacco regulations that it had adopted in 2018 pursuant to its authority under G. L. c. 111, § 31 (2018 Braintree regulations).[12]  These were subsequently amended in 2023 (2023 Braintree regulations).  Both versions were consistent with G. L. c. 270, § 28 (b), in that they prohibited the sale and offering for sale of flavored tobacco products.  However, when the Legislature subsequently enacted G. L. c. 270, § 28 (e), and amended G. L. c. 270, § 6 (d), the 2018 Braintree regulations became inconsistent with State law in that they provided that first time violators were subject to a one hundred dollar fine and a five-day suspension of a store's tobacco sales permit.  This inconsistency was eliminated when the board adopted the 2023 Braintree regulations, which impose a mandatory $1,000 fine for first time violations, without any suspension.[13]
            Against this legal framework, we turn to Cumberland Farms's arguments on appeal, keeping in mind that a civil action in the nature of certiorari, pursuant to G. L. c. 249, § 4, is a "limited procedure reserved for correction of substantial errors of law apparent on the record created before a judicial or quasi judicial tribunal."  Indeck v. Clients' Sec. Bd., 450 Mass. 379, 385 (2008), quoting School Comm. of Hudson v. Board of Educ., 448 Mass. 565, 575-576 (2007).  "[T]he proper standard of review under the certiorari statute is flexible and case specific, but . . . the disposition must ultimately turn on whether the agency's decision was arbitrary and capricious, unsupported by substantial evidence, or otherwise an error of law."  Langan v. Board of Registration in Med., 477 Mass. 1023, 1025 (2017), quoting Hoffer v. Board of Registration in Med., 461 Mass. 451, 458 n.9 (2012).  "A decision is not arbitrary or capricious unless there is no ground which 'reasonable [people] might deem proper' to support it."  Teamsters Joint Council No. 10 v. Director of the Dep't of Labor & Workforce Dev., 447 Mass. 100, 106 (2006), quoting Cotter v. Chelsea, 329 Mass. 314, 318 (1952).  "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion," considering the entire record, "including whatever in the record fairly detracts from its weight" (quotations and citations omitted).  Medical Malpractice Joint Underwriting Ass'n of Mass. v. Commissioner of Ins., 395 Mass. 43, 55 (1985).  See G. L. c. 30A, § 1 (6).  "[W]e accord no special weight to the decision of the Superior Court judge in reviewing the record before the [board]."  Teamsters Joint Council No. 10, 447 Mass. at 107.
            a.  Offer for sale.  Cumberland Farms argues that the board's finding that the store offered the Black & Mild cigars for sale on April 12, 2023, was error as a matter of law and unsupported by substantial evidence.  In Cumberland Farms's view, an item cannot be "offered for sale" if the store does not actually intend to sell it and the item cannot, in fact, be purchased.  We are not persuaded.  Whether a product has been offered for sale does not turn on whether the customer can, or ultimately does, purchase the product.  The Legislature carefully enumerated -- and prohibited –- two separate acts:  sales and offers to sell.[14]  See G. L. c. 270, § 28 (b).  Adopting Cumberland Farms's argument would eliminate any meaningful distinction between the two, and "[w]e do not 'interpret a statute so as to render it or any portion of it meaningless.'"  Volin v. Board of Pub. Accountancy, 422 Mass. 175, 179 (1996), quoting Adamowicz v. Ipswich, 395 Mass. 757, 760 (1985).  Finally, the act is designed to protect public health and, understood in that light, it would make no sense to focus on what might be the seller's subjective state of mind rather than on its actions.  The board thus made no error of law in finding the store had offered the cigars for sale, regardless of the store's intent to consummate a sale.
            Nor was the board's finding that the cigars had been offered for sale unsupported by substantial evidence.  Although the board did not need to look beyond the district manager's testimony that the cigars were "delivered to the [store] and . . . put up for sale" to reach its conclusion that a violation had occurred, the inspection officer's testimony and photographs amply supported that conclusion independently.  The cigars were in an open display box on a shelf behind the cash register alongside other tobacco products being offered for sale.[15]  This is precisely where "all tobacco products for sale" are required to be placed.  105 Code Mass. Regs. § 665.010(B) (tobacco products for sale are to be placed "behind the counter where retail sales are made in the establishment and out of the reach of consumers").  The board could conclude that the store's manner of placement and display of the cigars would have led a customer reasonably to believe that the cigars were available for purchase, and thus that they were being "offered for sale" in violation of G. L. c. 270, § 28 (b).  
            b.  Board's authority to impose a fine by administrative process.  Cumberland Farms argues that the board acted ultra vires when it administratively imposed the State-mandated $1,000 fine for a first violation.  In its view, the board was only permitted to impose a fine of that amount by filing a criminal complaint pursuant to G. L. c. 280, § 1,[16] and the board had no authority to impose the fine by administrative process.  We begin by noting that this argument has been waived.  Cumberland Farms did not raise the argument before the board even though the violation notice gave ample notice of the board's hearing, of the alleged violation, and of the board's view of the fines and penalties to which Cumberland Farms was exposed, nor did Cumberland Farms raise the argument once it learned of the board's order.  See Zoning Bd. of Appeals of Milton v. HD/MW Randolph Ave., LLC, 490 Mass. 257, 262-263 (2022); Albert v. Municipal Court of Boston, 388 Mass. 491, 493 (1983); Shamrock Liquors, Inc. v. Alcoholic Beverages Control Comm'n, 7 Mass. App. Ct. 333, 335 (1979).  Nonetheless, as a matter of discretion, we decide that there is "good cause to 'address the substantive question before us:  it has been fully briefed and argued, and public policy would benefit from the elimination of any uncertainty'" regarding the authority of local boards of health to enforce State and local tobacco laws and regulations.  Zoning Bd. of Appeals of Milton, 490 Mass. at 263-264, quoting Middleborough v. Housing Appeals Comm., 449 Mass. 514, 522 (2007).
            We turn first to the Legislature's grant of authority to DPH.  "An administrative agency [such as DPH] has only the powers and duties expressly or impliedly conferred on it by statute."  Armstrong v. Secretary of Energy & Envtl. Affairs, 490 Mass. 243, 248 (2022), quoting Matter of Elec. Mut. Liab. Ins. Co., Ltd. (No. 1), 426 Mass. 362, 366 (1998).  In this case, the Legislature authorized DPH to "promulgate such procedures, rules or regulations as it deems necessary to implement [G. L. c. 270, § 28]," including its prohibition on the sale, distribution, and offering for sale of flavored tobacco products, and its system of escalating penalties for violations of the statute.  G. L. c. 270, § 28 (g).  This broad delegation of authority to DPH for implementation of the act includes the authority to promulgate rules and regulations for the act's enforcement.  
            Pursuant to this statutory authority, DPH promulgated regulations that, as we have already noted, confer enforcement authority on local boards of health as follows:
"Unless otherwise expressly provided in any general law to the contrary, each board of health may enforce 105 [Code Mass. Regs. §§] 665.000, or otherwise at law or in equity in the same manner that local rules and regulations are enforced." 
105 Code Mass. Regs. § 665.055(B)(1).  This delegation to the local level was within the agency's authority, especially in light of the Legislature's broad language of delegation, which we read within the context of the long-standing history of local regulation of tobacco products.  See Six Bros., Inc. v. Brookline, 493 Mass. 616, 618 (2024) ("Local communities have a lengthy history of regulating tobacco products to curb the well-known, adverse health effects of tobacco use").  
"Where an administrative agency is vested with broad authority to effectuate the purposes of an act 'the validity of a regulation promulgated thereunder will be sustained so long as it is reasonably related to the purposes of the enabling legislation'" (quotation omitted).  Levy v. Board of Registration & Discipline in Med., 378 Mass. 519, 524-525 (1979), quoting Consolidated Cigar Corp. v. Department of Pub. Health, 372 Mass. 844, 855 (1977).  DPH's delegation of enforcement authority to local boards of health with respect to the sale, distribution, and offering for sale of flavored tobacco products falls comfortably within this principle.
            In the alternative, Cumberland Farms argues that 105 Code Mass. Regs. § 665.055(B)(1) creates no new enforcement pathway by which boards of health can administratively impose the fines and penalties established by the act.  It argues that the board was limited to using the preexisting mechanism of a criminal complaint under G. L. c. 280, § 1, in order to impose a $1,000 fine.  This argument is defeated by the plain language of 105 Code Mass. Regs. § 665.055(B)(1) itself.  That section identifies two alternative enforcement pathways:  a new administrative pathway by which a board of health may enforce the DPH regulations, and any existing pathways "at law or in equity in the same manner that local rules and regulations are enforced."  105 Code Mass. Regs. § 665.055(B)(1).  These two avenues are separated by the words "or otherwise."  Both components of this two-word phrase –- alone and in combination – signify that the two pathways are in the alternative, not conjoined.  "It is fundamental to statutory construction that the word 'or' is disjunctive unless the context and the main purpose of all the words demand otherwise" (quotation and citation omitted).  Commonwealth v. A.Z., 493 Mass. 427, 431 (2024).  And "otherwise" means "in a different way or manner."  Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/otherwise [https://perma.cc/8834-ZVF6].
            Nonetheless, Cumberland Farms points to the first clause of 105 Code Mass. Regs. § 665.055(B)(1) ("Unless otherwise expressly provided in any general law to the contrary . . .") and argues that the preexisting availability of criminal enforcement means that the Legislature has "expressly provided" that administrative enforcement is not available.  However, the availability of criminal enforcement does not foreclose an alternate civil mechanism of enforcement.  The two mechanisms can easily coexist.  Indeed, G. L. c. 280, § 1, itself contemplates the existence and availability of alternate enforcement paths:  "Fines and forfeitures exacted as punishments for offences or violation or neglect of any duty imposed by statute may, unless otherwise provided, be prosecuted for and recovered by indictment or complaint or by an action of tort in the name of the commonwealth in a court having jurisdiction of the offence or action" (emphasis added).  The word "may" reflects "the Legislature's intent to grant discretion or permission" and does not impose a mandate.  Commonwealth v. Dalton, 467 Mass. 555, 558 (2014).  Given that the statute authorizing criminal enforcement does not foreclose any alternative enforcement methods, there is no conflict created by DPH allowing local boards of health to impose the statutorily mandated fine by way of administrative process.
            c.  Procedural deficiencies.  Cumberland Farms raises two arguments concerning the procedures by which the board conducted its proceedings and issued notice of its order.  First, Cumberland Farms argues that the board's proceedings were fatally flawed because the board never adopted its own regulations authorizing or defining the process for imposing fines.  Second, it argues that the board did not issue a formal order, or serve notice of it, as required by 105 Code Mass. Regs. § 665.055, nor did the board allow Cumberland Farms seven days thereafter to petition for a hearing as to why the order should be modified or withdrawn, see 105 Code Mass. Regs. 655.055(F)(2).  Both arguments have been waived because they were not raised before the board.  See part b, supra.  Nevertheless, because public policy would benefit from removing any uncertainty concerning whether local boards are required to adopt their own procedures for the conduct of proceedings to enforce State tobacco laws and regulations, we choose to address the first argument.  The second argument, however, raises no such policy concerns, especially since the fine imposed by the board was statutorily mandated, the suspension was stayed by agreement, Cumberland Farms received actual notice of the board's order, and it did, in fact, petition for rehearing.  We accordingly do not address the second argument further.  
            As to the first argument, Cumberland Farms, relying on Water Dep't of Fairhaven v. Department of Envtl. Protection, 455 Mass. 740, 749-751 (2010), argues that, if the board had authority to conduct an administrative hearing resulting in a fine of $1,000, then it was required to adopt by regulation procedures governing such hearings.  Similar to this case, Water Dep't of Fairhaven involved a State agency the Legislature had authorized to create an adjudicatory proceeding.  Id. at 741.  Unlike here, however, although the agency followed through and created an adjudicatory proceeding, it failed to adopt it by regulation.  Id. at 749.  In those circumstances, we concluded that the agency's adjudicatory process was fatally flawed.  Id. at 751.  That is not the situation here.  DPH in fact promulgated by regulation an extensive set of procedural requirements for enforcement proceedings.  See 105 Code Mass. Regs. § 665.055.  
            Moreover, although local boards of health are permitted to adopt further rules and regulations, they are not required to, and in any event, any such local rules and regulations must be consistent with the DPH regulations: 
"The provisions of 105 [Code Mass. Regs. §§] 665.000 shall not limit the right of an appropriate authority in a city or town to adopt rules and regulations as may be necessary; provided, however, that such a rule or regulation shall not conflict with regulations promulgated by [DPH] or state or federal law."
105 Code Mass. Regs. § 665.057.  Thus, it is of no moment that the board did not adopt procedural rules of its own, since its enforcement proceedings are by default governed by the procedural requirements of the DPH regulations.      
Judgment affirmed.
 
footnotes

 
            [1] We acknowledge the amicus briefs submitted by the Massachusetts Association of Health Boards and the Public Health Advocacy Institute, Inc.; and the Massachusetts Department of Public Health.
            [2] General Laws c. 270, § 28 (e), incorporates the penalty scheme set forth in G. L. c. 270, § 6 (d).
            [3] The photographs are included in the appellate record, and we have reviewed them.
            [4] The board also imposed a five-day suspension of the store's tobacco sales permit to begin the following day.  The suspension was stayed by agreement of the parties and later vacated by the Superior Court judge on the ground that it exceeded the penalty allowed for a first-time violation under the State statute and regulations.  See G. L. c. 270, § 6 (d); 105 Code Mass. Regs. § 665.045.  The town has not appealed from that determination, and no aspect of the suspension is before us.
            [5] Cumberland Farms does not press on appeal its argument concerning its activities as a distributor of tobacco products, nor does it press either of its two arguments concerning the imposition of the five-day suspension of the store's tobacco sales permit, which, as we have noted, was stayed and later vacated.  See note 4, supra.
            [6] As relief, Cumberland Farms sought a permanent injunction against the board from enforcing its order as well as its costs and attorney's fees.
            [7] Strictly speaking, only Cumberland Farms filed a motion for judgment on the pleadings.  However, the judge deemed the board's opposition to be a cross motion.  See Superior Court Standing Order 1-96(4) (2020) ("A claim for judicial review [of an administrative decision] shall be resolved through a motion for judgment on the pleadings . . . [and a] defendant's response shall be deemed to include a cross-motion for judgment on the pleadings").
            [8] The judge also vacated the five-day suspension of the store's tobacco sales permit.  See note 4, supra.
            [9] This prohibition codified at the State level similar bans that had already been adopted on the local level.  Indeed, by the time the act passed in 2019, over 160 municipalities in Massachusetts, including Braintree, had already prohibited the sale of flavored tobacco products.  See Lannan, Amid Uproar, House Eyes Comprehensive Vaping Bill, State House News Service, Sept. 25, 2019.
            [10] "No person shall sell, distribute, cause to be sold or distributed, or offer for sale to a consumer located in the Commonwealth a flavored tobacco product or tobacco product flavor enhancer . . . ."  105 Code Mass. Regs. § 665.010(D).
            [11] "(1) In the case of a first violation, a fine of $1,000 shall be imposed.
"(2) In the case of a second violation within a period of 36 months from the first violation, a fine of $2,000 shall be imposed; and a prohibition on the sale of tobacco products may be imposed for at least one day and up to seven consecutive business days, or for a longer term as enacted, adopted, or promulgated in a rule, regulation or other measure by the appropriate and legally designated health authority of the city, town, or other legally constituted governmental unit within the Commonwealth. 
"(3) In the case of a third violation within a period of 36 months from the first violation or additional violations during that time period, a fine of $5,000 shall be imposed; and a prohibition on the sale of tobacco products may be imposed for at least seven consecutive business days and up to 30 consecutive business days, or for a longer term as enacted, adopted, or promulgated in a rule, regulation or other measure by the appropriate and legally designated health authority of the city, town, or other legally constituted governmental unit within the Commonwealth."
105 Code Mass. Regs. § 665.045(A).
            [12] General Laws c. 111, § 31, authorizes boards of health to "make reasonable health regulations" and provides that "[w]hoever . . . violates any reasonable health regulation, made under authority of this section, for which no penalty by way of fine or imprisonment, or both, is provided by law, shall be punished by a fine of not more than one thousand dollars."
            [13] Although the 2023 Braintree regulations did not take effect until after the violation in this case, Cumberland Farms wisely does not argue that it should be fined only one hundred dollars rather than $1,000.  General Laws c. 270, §§ 28 (e) and 6 (d), established a mandatory $1,000 fine at the time of the violation, and the statutory remedy preempted the conflicting provision in the local regulations.  See 105 Code Mass. Regs. § 665.057.
            [14] General Laws c. 93A, another statute designed to protect consumers, also provides that both a sale and an offer to sell can independently constitute an unfair or deceptive act or practice under the statute.  See Herman v. Admit One Ticket Agency LLC, 454 Mass. 611, 618 (2009) (actual sale of ticket offered for sale at unlawful price is not prerequisite to establish c. 93A violation).
            15 Cumberland Farms does not contend that the other products depicted in the photographs were not offered for sale.
            [16] The noncriminal disposition procedure of G. L. c. 40, § 21D, is limited to fines of $300 or less and is, accordingly, unavailable here given that the act's system of escalating fines begins at $1,000.